**Jimmy Dan McKEY, Plaintiff,**

v.

**OCCIDENTAL CHEMICAL CORPORATION and OxyChem, Defendant.**

**Civil Action No. G–96–170.**

United States District Court,
S.D. Texas,
Galveston Division.

Feb. 28, 1997.

Sean Patrick Tracey, Apffel & Tracey, Alvin, TX, for Jimmy Dan McKey.

Holly Harvel Williamson, Littler Mendelson Fastiff & Tichy, Houston, TX, for Occidental Chemical Corp. and OxyChem.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

This is a wrongful termination case brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (the ADA). Plaintiff alleges that the Defendants discriminated against him on the basis of his alcoholism. Plaintiff also alleges state law claims of intentional infliction of emotional distress. Now before the Court is Defendants' Motion for Summary Judgment, dated December 20, 1996. For the reasons set forth below, the Motion is **GRANTED.**

### I. FACTUAL BACKGROUND

Plaintiff Jimmy Dan McKey is a former Occidental Chemical Corporation (Oxy) employee who was terminated in June of 1995. Prior to his termination, McKey worked as an operator at the Vinyl Chloride Monimoner (VCM) Unit of Oxy's Deer Park Plant (the Plant). Because the VCM Unit is a safety sensitive unit, it is important for the operators and employees of that unit to observe carefully all safety and environmental procedures. The Defendants describe several incidents involving McKey led them to conclude that McKey might pose a risk to the safety and welfare of the Plant's employees and of the surrounding community.

Oxy requires that all employees go through extensive training on safety issues both prior to and during their job assignment. The Plant's drug and alcohol policy is one of the many safety issues discussed during these training sessions. Due to the safety sensitive nature of the plant environment, Oxy emphasizes the importance of enforcing its drug and alcohol policy. If the company develops a reasonable suspicion that an employee may have a drug or alcohol abuse problem, it refers that employee to the company's Plan 21 Employee Assistance Program (EAP) for diagnosis and treatment. If an employee is required to take leave for treatment for a drug or alcohol problem, Oxy requires the employee to execute a Return to Work Agreement as a condition of returning to and continuing employment. Oxy utilizes these Return to Work Agreements to make an effort to continue to employ the individual while at the same time taking precautions to ensure the safety of other employees and the surrounding community.

The conditions of the Return to Work Agreement include: the employee's agreement to primary treatment and aftercare as designated by the employee's therapist; the employee's agreement to attend support groups or therapy as designated by the employee's therapist or counselor; the employee's agreement that he will meet with his counselor or group as designated by the EAP counselor; the employee's agreement that work requirements are the only excuse for missing a meeting; the employee's agreement to remain abstinent from mood altering chemicals, including alcohol, except on prescription of the employee's physician; and the employee's understanding that failure to comply with any of these conditions is cause for immediate termination. Defendants' Ex. A–1. Oxy strictly enforces all of the terms of its Return to Work Agreements. If an employee violates any terms of the agreement, he is terminated.

In August of 1993, Oxy received a report that McKey had extorted alcohol from the employees of Furmanite, an Oxy contractor. An investigation revealed that Furmanite employees provided the bottles of liquor to McKey in response to McKey's demands for the liquor. Moreover, McKey had implied that Furmanite's future relationship with the Plant depended on its compliance with his demands for liquor and his demands that Furmanite call him for overtime duty. Although the carrying of alcohol on Oxy property and the extortion were both grounds for termination, Oxy chose not to terminate McKey. Instead, McKey was suspended for three days without pay and placed on indefinite probation. However, in November 1993, McKey attempted to take paint from the Plant. Again having grounds for discharge, Oxy instead gave McKey another chance.

McKey was suspended for four days without pay, demoted, and continued on indefinite probation.

Concerned about McKey's behavior, Oxy's Human Resources Manager referred McKey to the EAP for counseling and evaluation. McKey was informed that all employees who are referred to the EAP for suspected drug or alcohol problems were required to sign a Return to Work Agreement as a condition of returning to work. McKey signed the standard Return to Work Agreement, including all of the conditions listed above, on January 10, 1994.

On March 1, 1995, while on his day off, McKey was seriously injured in a single car accident.[1] Because of the injuries he sustained in that accident, McKey was unable to return to work for nine weeks. McKey signed a release allowing Oxy to obtain his hospital records, which revealed that on the date of the accident, McKey's blood alcohol level registered 0.314, more than three times standard level of intoxication in Texas. *See* Texas Penal Code § 49.01(1)(B) (Vernon 1994). In short, McKey was drunk at the time of his accident, a direct violation of his Return to Work Agreement.

Because McKey violated his Return to Work Agreement by consuming alcohol, Oxy terminated his employment. McKey now claims that he is an alcoholic, and that alcoholism is a qualified disability under the ADA. McKey further contends that Oxy discriminated against him and intentionally inflicted emotional distress upon him by terminating his employment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving

party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. ADA CLAIMS

■ The Fifth Circuit applies the burden shifting analytic framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze claims under the ADA.[2] *Daigle v. Liberty Life Ins.,* 70 F.3d 394, 396 (5th Cir.1995).

Under the familiar *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine the motivation of the defendant in taking the challenged action. *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. First, the plaintiff is required to establish a *prima facie* case wherein he must establish the elements of the discrimination claim. If the plaintiff proves his *prima facie* case, a presumption of discrimination arises. *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955 (5th Cir.1993).

The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory rea-

---

1. Plaintiff testified at his deposition that he remembers little about the day of his accident. He further admitted that he often blacks out while intoxicated and cannot recall any events leading up to or during his intoxicated state.

2. *McDonnell Douglas* was refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and recently clarified in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

son for the alleged discriminatory action. *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471 (5th Cir.1992), *cert. denied*, 507 U.S. 909, 113 S.Ct. 1253, 122 L.Ed.2d 652 (1993). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the defendant. *Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir.1991), *cert. denied*, 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). The defendant need not *persuade* the trier of fact that there was no intentional discrimination; it need only produce evidence on that point. *Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747.

Third, once the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's *prima facie* case dissolves. *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The plaintiff's burden of persuasion then arises, and the plaintiff must produce evidence that the defendant's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible animus. *Id.* at 256, 101 S.Ct. at 1095; *Bodenheimer*, 5 F.3d at 959. He may succeed in this either by persuading the Court that a discriminatory reason more likely motivated the defendant or by showing that the defendant's reason is unworthy of credence. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of proof of intentional racial discrimination rests at all times on the plaintiff. *Hicks*, 509 U.S. at 507, 113 S.Ct. at 2749.

Summary judgment is particularly appropriate when the Court is evaluating the evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

> [I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, non-discriminatory reason for his decision.... In the context of summary judgment ..., the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.

*Britt v. The Grocers Supply Co. Inc.*, 978 F.2d 1441, 1450 (5th Cir.1992), *cert. denied*, 508 U.S. 960, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993), *quoting, Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 811 (5th Cir.1991). Speculation and belief are insufficient to create a fact issue as to pretext. *Britt*, 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against. *E.E.O.C. v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir.1984).

The Plaintiff here cannot establish a *prima facie* case of discrimination under the ADA because he cannot show that he is "disabled" as that term is defined by the ADA. To establish a *prima facie* case of employment discrimination under the ADA, the Plaintiff must show that he:

(1) was "disabled" as that term is defined by the ADA,

(2) is qualified, with or without accommodation, for the position sought,

(3) was subject to adverse employment action, and

(4) was replaced by a non-disabled person or was treated less favorably than non-disabled employees.

*E.E.O.C. v. Texas Bus Lines*, 923 F.Supp. 965, 969 (S.D.Tex.1996), *citing Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 254 (5th Cir.1990); *EEOC v. Brown & Root, Inc.*, 688 F.2d 338, 340–41 (5th Cir. 1982). Under the ADA, an individual is considered to have a disability if that individual either has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," or has "a record of such impairment," or is "regarded as having such an impairment." [3] 42 U.S.C. § 12102(2); *see also* 29 C.F.R. 1630.2(g).

Admittedly, alcoholism is a condition that, if left untreated, can rise to the level of an impairment or even a disability under the ADA. Nowhere in the ADA, however, does it state that an alcoholic is disabled *per se*. In fact, the ADA does not designate any impairment as a disability *per se*. Instead, the

---

**3.** McKey does not contend that he is disabled under the second or third definitions. Moreover, there is no evidence that Plaintiff had "a record

of such an impairment" or was "regarded as having such an impairment" as those terms are used under the ADA.

Interpretive Guidelines to the ADA emphasize the impact an alleged impairment has on the individual. "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. 1630.2(j), App. (1996); *see also Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 164 (5th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996). Therefore, a person claiming to be disabled because of alcoholism must still establish that he satisfies the requirements of the definition of a disability under the ADA and its accompanying regulations.

Accordingly, the Plaintiff must establish that his alleged alcoholism qualifies as a disability that substantially limits one or more of his major life activities. 42 U.S.C. § 12102(2). Although the ADA does not explain what is meant by a "substantial limitation" or a "major life activity," the regulations provide significant guidance. A substantial limitation is one that renders an individual unable to perform, or significantly restricts an individual's ability to perform, a major life activity that the average person in the general population could perform. 29 C.F.R. 1630.2(j)(1). Major life activities are those basic functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i).

The Fifth Circuit has made clear that even serious impairments[4], including cancer, do not necessarily rise to the level of a "disability"; nor do all disabilities substantially limit one or more major life activities. *See, e.g., Bridges v. City of Bossier,* 92 F.3d 329, 334 (5th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 770, — L.Ed.2d — (1997) (hemophilia that excluded plaintiff from his chosen occupational field of firefighter is not a substantial limitation on the major life activity of working); *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir.1996) (chronic ankle problems including gout, bone spurs, and ligament damage that required plaintiff to miss more than one year of work was not severe enough or chronic enough to qualify as a disability); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 191 (5th Cir.1996) (breast cancer requiring chemotherapy and involving significant side effects from treatment did not qualify as a disability); *Oswalt v. Sara Lee Corp.,* 74 F.3d 91, 93 (5th Cir.1996) (high blood pressure not substantially limiting). Therefore, whether an impairment substantially limits a major life activity must be determined, not by how "disabling" the impairment sounds, but rather by the impact of the impairment on the individual.

The Plaintiff has admitted that his alcoholism does not limit any major life activity. By his own testimony, Plaintiff's ability to hear, to speak, to breathe, to learn, to lift things, to stand, to walk, to reach, to sit, to climb, to think, to see, to run, to eat, to dress and bathe himself, and perhaps most importantly, to concentrate and hold down a job, have not been impaired by his alcoholism. Because Plaintiff is fully able to perform these basic functions, *i.e.,* these major life activities, his alcoholism does not qualify as a disability under the ADA. Therefore, the Plaintiff cannot establish his *prima facie* case as a matter of law.

■ However, assuming, *arguendo,* that Plaintiff could establish each of the elements of his *prima facie* case, Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's termination. The terms of the Return to Work Agreement are clear. It specifically states that as a condition of continuing his employment, Plaintiff "agree[d] to remain abstinent from mood altering chemicals, including alcohol, except on prescription of [his] physician." Defendants' Ex. A–3. In signing the Agreement, Plaintiff further asserted that he "[understood] that a failure to comply with any of the above conditions would be cause for immediate termination." *Id.* In June 1995, when Defendants received Plaintiff's medical records contain-

---

4. Under the ADA, "impairments" are separate and distinct from "disabilities." To form the basis of an ADA qualified disability requires that an "impairment" substantially limit a major life activity. 42 U.S.C. § 12102(2); 29 C.F.R. 1630.2(g).

ing Plaintiff's blood alcohol level report, they discovered that Plaintiff had been drinking alcohol in violation of this Agreement.[5] Defendants terminated Plaintiff's employment for failure to comply with the terms of his Return to Work Agreement.

The fact that Defendants terminated the Plaintiff for failing to honor the terms and conditions of his Return to Work Agreement is a legitimate reason for their decision to terminate his employment. The Court finds an important distinction between discharging an employee for unacceptable misconduct and discharging an employee because of a disability. The ADA specifically provides that an employer may hold an alcoholic employee to the same performance and behavior standards to which the employer holds other employees "even if any unsatisfactory performance is related to the alcoholism of such employee." 42 U.S.C. § 12114(c)(4). Thus, the statute clearly contemplates distinguishing the issue of misconduct from an employee's status as an alcoholic. To find otherwise would force employers to accommodate all behavior of an alcoholic which could in any way be related to the alcoholic's use of intoxicating beverages; behavior that would be intolerable if engaged in by a sober employee or, for that matter, an intoxicated but non-alcoholic employee.

The violation of Plaintiff's Return to Work Agreement constitutes misconduct sufficient to terminate his employment, even if that misconduct was related to his alcoholism. The Plaintiff voluntarily entered into the Return to Work Agreement, fully understanding its terms and conditions. The Court must strictly construe such Agreements. Thus, while the provisions of the Return to Work Agreement may seem severe, the Court's role is not to reinterpret them. Therefore, the Plaintiff must abide by the consequences of his Agreement.

Of course, the Plaintiff would not have entered into the Return to Work Agreement had it not been for his alcoholism. However, the Plaintiff was terminated because he breached that Agreement, not because of he

is an alcoholic. To attribute the termination to Plaintiff's alcoholism ignores an important element of this case. The Return to Work Agreement itself was a reasonable attempt to accommodate the Plaintiff's alleged disability. Refusing to recognize that would render all Return to Work Agreements meaningless, as every breach simply would be attributed to the problems related to the alleged disability. The Court will not discourage the use of such Agreements by rendering their terms meaningless.

Plaintiff has not presented any evidence to support an argument that Defendants' offered reason is a mere pretext for improper animus. The Court can find no fact issues regarding the issue of pretext which would preclude summary judgment at this time. Speculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against. Accordingly, for all of the reasons stated above, the Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's ADA claims and those claims are hereby **DISMISSED WITH PREJUDICE.**

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS

 Plaintiff also alleges claims of intentional infliction of emotional distress against his former employer. To prevail on a claim of intentional infliction of emotional distress under Texas law, a plaintiff must establish that the defendant acted intentionally or recklessly; that the conduct was "extreme and outrageous"; that the actions of defendant caused the plaintiff emotional distress; and, that the emotional distress suffered by the plaintiff was severe. *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989). Whether conduct is extreme and outrageous is initially a question of law for the Court. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). Conduct is considered "outrageous" if it surpasses "all possible bounds of decency" such that it is "ut-

---

**5.** As recently as October 31, 1996, the date of his deposition, the Plaintiff admitted that he continues to drink.

terly intolerable in a civilized community." *Id.* Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1143 (5th Cir.1991). Even conduct which may be illegal in an employment context may not be the sort of conduct constituting extreme and outrageous conduct. *Id.*

 First, the statute of limitations bars any claims based on facts that occurred more than two years before this action was filed. Plaintiff filed this action on March 28, 1996; therefore, any conduct that occurred before March 28, 1994, is barred by the applicable two-year statute of limitations. TEX.CIV. PRAC. & REM.CODE § 16.003; *Muckelroy v. Richardson I.S.D.,* 884 S.W.2d 825, 829 (Tex. App.—Dallas 1994, writ denied); *Stevenson v. Koutzarov,* 795 S.W.2d 313, 319 (Tex. App.—Houston[lst Dist.] 1990, writ denied) Thus, only those acts occurring since March 28, 1994 are relevant in assessing whether the Defendants' conduct was extreme and outrageous. A review of the record reveals that the only incident occurring between March 28, 1994 and the last day of Plaintiff's employment, June 15, 1995, is Plaintiff's termination.

Clearly, the threshold for extreme and outrageous conduct is high and the conduct about which Plaintiff complains, his termination, does not come close to meeting that threshold. Plaintiff's complaint here amounts to a mere employment dispute. As a matter of law, such conduct is not extreme nor outrageous and will not support a claim for intentional infliction of emotional distress. *Johnson v. Randall's Food Markets, Inc.,* 869 S.W.2d 390, 397 (Tex.App.—Houston [1st Dist.] 1993), *rev'd on other grounds,* 891 S.W.2d 640 (Tex.1995). Accordingly, the Defendants' Motion for Summary Judgment is **GRANTED** as to the Plaintiff's state law claims of intentional infliction of emotional distress and those claims are hereby **DISMISSED WITH PREJUDICE.**

6. The Defendant OxyChem Corp. argues that it is entitled to Summary Judgment on the grounds that it was never Plaintiff's employer; in fact, Oxy Chem employs no one. However, as all

## V. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment is hereby **GRANTED** and all claims are **DISMISSED WITH PREJUDICE.**[6] All parties are further **ORDERED** to bear their own costs incurred herein to date.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order entered this date, the Defendants' Motion for Summary Judgment is **GRANTED** and all claims are hereby **DISMISSED WITH PREJUDICE.** All parties are **ORDERED** to bear their own costs incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

claims against the Defendants have already been dismissed on other grounds, the Court fails to reach this issue.