Ross H. STUART, Plaintiff,

v.

DANKA CORPORATION, Stephen L. Schloss, and Jerry Blaine, Defendants.

No. CV 95–708.

United States District Court, E.D. New York.

Dec. 12, 1997.

The Harmon Firm by James D. Harmon, New York City, for Plaintiff.

Davidoff & Malito by Peter M. Ripin, New York City, Jones Hirsch Connors & Bull by Richard L. Steer, New York City, Shumaker, Loop & Kendrick by William E. Curphey, Tampa, FL, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Presently before the Court is defendants' motion for a directed verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure. Plaintiff brought this suit against his former employer, Leslie Supply Company ("Leslie Supply") and Leslie Supply's owners, Stephen L. Schloss and Jerry Blaine, asserting a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and various claims under state law. Plaintiff's ADA claims may be briefly stated. Plaintiff, a salesman and recovering alcoholic, contends that defendants discriminated against him as a recovering alcoholic by requesting him to bribe prospective corporate purchasers to buy copiers from Leslie Sup-

ply. Defendants' request, he claims, threatened his sobriety and his refusal to participate in the scheme because of his disability resulted in his constructive termination from his position. Plaintiff further asserts a retaliation claim under the ADA based on the constructive discharge. These ADA claims are asserted only against Leslie Supply.

Plaintiff's state law claims may also be briefly stated. Analogous to his ADA claim, plaintiff asserts that defendants' discrimination based on his alcoholism violates Executive Law § 296, subd.1(a), the New York State Human Rights Law (N.Y.SHRL). Plaintiff also alleges that defendants' conduct in asking him to participate in the alleged bribery scheme and subsequently terminating him because of his refusal to do so, constitutes an intentional infliction of emotional distress. Both state law claims are asserted against Leslie Supply, Schloss, and Blaine.

Before trial, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Court reserved decision. At the close of plaintiff's case, defendants renewed their motion for judgment as a matter of law under Rule 50(a), claiming that plaintiff's status as a recovering alcoholic was not a per se disability under the ADA or the NYSHRL. Similarly, defendants contend that no retaliation occurred because plaintiff was not engaged in a protected activity under the ADA. Defendants further contend that, under New York law, there is no basis for his intentional infliction of emotional distress claim, punitive damages claim, or breach of contract claim. For the reasons stated below, the Court grants defendants' Rule 50 motion and dismisses plaintiff's complaint.

## FACTS

Plaintiff began his employment with Leslie Supply in 1980. In July 1985, he left the company because of gambling and alcohol addiction, but returned in September of that year. In 1989, he voluntarily left Leslie Supply to work for Southern Business Machines in London, England. In 1991, plaintiff returned to Leslie Supply and was appointed sales manager. Later, he was promoted to the position of branch manager. In March 1993, plaintiff asserts that defendants asked him to participate in a bribery scheme, namely, giving kickbacks to certain individuals at Ernst & Young in order to procure that company's business. Plaintiff further states that he refused to participate in this scheme because he believed that committing such a dishonest act would threaten his sobriety as a recovering alcoholic. Plaintiff had been a member of Alcoholics Anonymous since 1984 and, he contends, defendants were aware of his addiction to alcohol as well as gambling. In December 1993, plaintiff's commission points were reduced. Plaintiff's 1993 total compensation amounted to approximately $220,000.

In February 1994, plaintiff was given notice that changes were occurring in the company. On April 15, 1994, plaintiff was informed that he would no longer be branch manager for the New York area. On April 28, 1994, he received a memo directing him to concentrate his efforts on Leslie Supply's copier leasing program, and informing him that his salary would be cut by $250 a month. On May 1, 1994, Leslie Supply's accountant sent plaintiff a memo canceling his advance against commissions. Plaintiff eventually left the employ of Leslie Supply and construes the acts of the company as amounting to a constructive termination.

At some time between April 15 and April 28, 1994, plaintiff retained an attorney, Ed Boyle. Boyle sent a letter to defendants, informing them that he would like to meet to discuss what he termed plaintiff's "constructive termination." On May 3, 1994, Mr. Boyle sent an additional letter to defendants' attorney, asserting plaintiff's protection under the ADA and requesting that defendants reinstate plaintiff's salary and his advance against commission. The following day, plaintiff filed a complaint with the Equal Employment Opportunity Commission, charging defendants with discrimination and retaliation under the ADA. Subsequent to these events, in May 1994, plaintiff, believing he had been constructively discharged, left the company. He currently works for another copier company in the Dallas, Texas area. His 1996 income was approximately $69,000.

Plaintiff concedes that nothing that Leslie Supply allegedly did to him caused him to resume drinking, and he admits that he has not had an alcoholic drink since 1985.

## DISCUSSION

### I. Standard for Judgment as a Matter of Law

A defendant may bring a motion for a judgment as a matter of law at the close of the plaintiff's case. Fed.R.Civ.P. 50(a)(1). "The purpose of the rule is to enable the court to determine if there is any question of fact to be submitted to the jury and whether any verdict in favor of the plaintiff would be erroneous as a matter of law." *Jones v. Associated Universities, Inc.*, 870 F.Supp. 1180, 1192 (E.D.N.Y.1994), *aff'd*, 71 F.3d 406 (2d Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 123, 136 L.Ed.2d 73 (1996). Rule 50 "allows the court to take away from the jury cases that the law requires a particular result." *Id.*

When presented with a Rule 50 motion, the task of the Court is to determine whether there is a sufficient evidentiary basis for a reasonable jury to find for a party heard at trial. A district court should grant a directed verdict when the evidence, even when viewed in the light most favorable to the non-moving party, is such that a rational juror could reach but one conclusion. *Gardiner v. Incorporated Village of Endicott*, 50 F.3d 151, 154 (2d Cir.1995).

### II. Americans with Disabilities Act (ADA) Claim

Plaintiff claims he was discriminated against based on his status as a recovering alcoholic. Participating in the bribery scheme, he contends, threatened his sobriety. Upon review of the evidence, however, it is apparent that plaintiff presents nothing more than an abusive discharge suit masquerading as a disability discrimination claim. It is well settled that an assertion of abusive discharge does not state a viable cause of action under New York law. *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (N.Y.1983). Plaintiff's would-be discrimination claim under the ADA must be dismissed because no reasonable juror could find that he has a disability within the meaning of the statute or that he was discriminated against because of his alleged disability.

The ADA proscribes employment discrimination, including termination of employment, based on disability: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees ..." 42 U.S.C. § 12112(a). In order to establish a prima facie case of discrimination under the ADA, plaintiff must establish that he has a disability within the meaning of the ADA. *See Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d.Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

For plaintiff's impairment to rise to the level of a disability under the ADA, it must substantially limit one or more of his major life activities. 29 C.F.R. § 1630.2(i). A "major life activity" is further defined in the regulations as such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. § 1630.2(j)(1)(i) & (ii). An impairment "substantially limits" a major life activity if the putatively disabled person is (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person can perform the same major life activity. 29 C.F.R. § 1630.2(j)(1). With respect to the major life activity of working, the term "substantially limits" means significantly restricted in the ability to perform a class of jobs or a broad range of jobs of various abilities. 29 C.F.R. § 1630.2(j)(3)(i). A recovering alcoholic like plaintiff must establish that his alcoholism has substantially limited a major life activity. *See McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1318 (S.D.Tex.1997). Moreover, inability to perform a specific job is not enough to show a disability; rather, the ADA requires the

plaintiff to be unable to work generally. *See Heilweil*, 32 F.3d at 722; *Greenberg v. New York*, 919 F.Supp. 637, 641–42 (E.D.N.Y. 1996).

Plaintiff, however, does not present any evidence from which a reasonable juror could find that plaintiff was disabled within the meaning of the ADA, i.e., he could not work generally nor that his employment capabilities were limited in any way. In fact, the record amply demonstrates that plaintiff is industrious and able to assume positions of significant responsibility. With only a few months of interruption in 1985, plaintiff has worked continuously. At Leslie Supply, during his years as a recovering alcoholic, he held positions of significant responsibility. In the 1980s, he brought in a number of major accounts, including one with Bankers Trust that he estimated was worth seven to ten million dollars of revenue to the company. In 1991, he became branch manager of the New York office, a position which required him to supervise the training and production of all new salespeople. In 1992, he was awarded a trip to Phoenix in recognition of his management performance. On another occasion, he won a trip to Puerto Rico in appreciation of his performance. Over the years, he won numerous Directors Guild Awards, an award given to him by defendants, acknowledging his superior accomplishments. In 1993, he earned approximately $220,000. Transcript (TR) 49–53. There is no indication from the evidence presented that plaintiff's capacity for work was in any way diminished throughout his employment with Leslie Supply, or that any of the company's alleged acts actually resulted in plaintiff taking even a single drink. No reasonable juror could fairly characterize plaintiff as a person whose major life activities were substantially impaired, the standard for disability under the ADA.

Alternatively, a plaintiff may qualify for protection under the ADA by demonstrating either that he had a record of an impairment that substantially impaired a major life function or that his employers perceived him as having such an impairment. *See* 42 U.S.C. § 12102(2). Plaintiff, however, presented no evidence from which a jury could conclude that he had a record of such a disability or that his employers perceived him to have such.

■ Even if plaintiff could raise a genuine issue of fact, as he has not, that he is disabled within the meaning of the statute, he further must show that the adverse employment actions he describes were taken against him because he was a recovering alcoholic. On the facts alleged, plaintiff would need to prove that defendants targeted him as a recovering alcoholic because they knew that his participation in the bribery scheme would compromise his sobriety. Plaintiff offered no evidence from which a reasonable juror could conclude that defendants sought his participation in the alleged bribery scheme because he was an alcoholic, with the knowledge that it would threaten his sobriety. Plaintiff's working conditions were changed to his detriment not because he was a recovering alcoholic, but because he refused to participate in the alleged bribery scheme. Indeed, plaintiff conceded as much—when this Court asked plaintiff to state the reason he was terminated, he replied "I think I was terminated because I refused to do a bribe." TR 71. Plaintiff conceded at trial that other employees were asked to participate in the bribery scheme and that he was not singled out to pay a bribe. TR 191. Because plaintiff fails to present evidence tending to show that his impairment rises to the level of a disability as described under the ADA, or that he was discriminated against because of his alcoholism, his ADA claim is unsubstantiated as a matter of law and must be dismissed.

### III. *ADA Retaliation Claim*

■ The ADA recognizes a cause of action for retaliation. Under the statute, "[n]o person shall discriminate against any individual because such an individual has opposed any act or practice made unlawful by this [Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the [Act]." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation, a plaintiff must prove that (1) he was engaged in an activity protected by the ADA, (2) an adverse employment action

occurred, and (3) there exists a causal link between the protected activity and the adverse employment decision. *See Howard v. Navistar Int'l Transp. Corp.,* 904 F.Supp. 922, 930 (E.D.Wis.1995), *aff'd,* 107 F.3d 13 (7th Cir.1997). Even construed in the light most favorable to plaintiff, his claim fails to meet the three part test for retaliation under the ADA.

As the evidence was presented at trial, plaintiff lost his position as branch manager on April 15, 1994. Subsequently, plaintiff received two memos. The first, dated April 28, 1994, advised him that his salary would be reduced by $250 a month. The second, dated May 1, 1994, advised him that he would no longer receive advances against his commissions. Sometime after April 15, plaintiff retained an attorney, Edward Boyle. On April 26, 1994, Mr. Boyle advised defendants that he had been retained and, two days later, met with defendants and their counsel to discuss plaintiff's employment situation. While references were made to the plaintiff's "constructive termination" in both the letter and the discussion, no mention was made of plaintiff's status as a recovering alcoholic, nor his putative protection under the ADA. The first reference to the ADA or plaintiff's alcoholism occurs in the May 3, 1994 letter sent to defendants. Plaintiff voluntarily resigned shortly thereafter.

Upon reviewing the evidence in the light most favorable to the plaintiff, it is clear that no reasonable juror could find that these adverse employment actions (i.e., plaintiff's demotion, cut in salary, and elimination of his draw) were retaliation for pursuing the rights available to him under the ADA (assuming *arguendo* plaintiff is disabled and has any rights under the ADA). The adverse actions antedate any reference by plaintiff or his attorney to plaintiff's rights under the ADA. Accordingly, plaintiff's retaliation claim must be dismissed.

### IV. *NYSHRL Claim*

"The definition of a disability under the NYSHRL does not vary significantly from the ADA definition." *Schwartz v. Comex,* No. 96–3386, 1997 WL 187353, at *4 (S.D.N.Y. April 15, 1997). The NYSHRL, however, imposes a requirement of complete impairment in contrast to the ADA's more lenient requirement of substantial impairment. The NYSHRL also requires that a major bodily function be impaired, rather than a major life activity, as under the ADA. *See* N.Y. Exec. Law § 292(21). Plaintiff presented no evidence tending to show that he suffered from the complete impairment of any bodily function, a record of such, or a perception of such by his employer. Accordingly, plaintiff's NYSHRL claim must be dismissed. *See Schwartz,* 1997 WL 187353, at *4 (where plaintiff's mental illness failed to qualify as disability under ADA, it would not qualify under stricter standard of NYSHRL.).

### V. *Intentional Infliction of Emotional Distress*

In order to sustain a claim for intentional infliction of emotional distress, plaintiff must prove that defendants engaged in conduct that goes beyond "all possible bounds of decency" with either the intention to cause severe emotional distress or knowledge that the conduct would result in severe emotional distress, and that the conduct in fact caused plaintiff to experience severe emotional distress. *Gay v. Carlson,* 60 F.3d 83, 89 (2d Cir.1995). The alleged impermissible conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Tarr v. Credit Suisse Asset Management, Inc.,* 958 F.Supp. 785, 805 (E.D.N.Y.1997). Plaintiff's constructive termination as a result of refusing to participate in an alleged bribery scheme does not, as a matter of law, rise to the level of "outrageous conduct." In light of the fact that New York does not recognize a cause of action for abusive discharge, this Court will not allow plaintiff to circumvent that well settled rule by recasting his abusive discharge claim as one for intentional infliction of emotional distress. *See Murphy,* 461 N.Y.S.2d at 236, 448 N.E.2d 86; *Tramontozzi v. St. Francis College,* 232 A.D.2d 629, 649 N.Y.S.2d 43, 45 (2d Dept. 1996).

In any event, plaintiff fails to present evidence that defendants intentionally terminated him with the intent of causing him severe emotional distress, a necessary element of the cause of action. No reasonable juror could conclude from the evidence presented that defendants intended to cause plaintiff to suffer severe distress or knew that such would result. Consequently, plaintiff's claim of intentional infliction of emotional distress must be dismissed.

## VI. *Punitive Damages Claim*

█ There is no separate cause of action for punitive damages under New York law. *See Weir Metro Ambu–Service, Inc. v. Turner,* 57 N.Y.2d 911, 456 N.Y.S.2d 757, 757, 442 N.E.2d 1268 (1982). Punitive damages may be awarded only as a component of damages under some other cause of action. Because no liability exists under any cause of action, punitive damages cannot be awarded.

### CONCLUSION

For the foregoing reasons, defendants' motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure is granted. Defendants' post-judgment request for attorneys' fees and sanctions are denied.

SO ORDERED.