ACCEPTED
03-14-00714-CV
5333993
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/19/2015 9:43:10 AM
JEFFREY D. KYLE
CLERK

# NO. 03-14-00714-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/19/2015 9:43:10 AM
JEFFREY D. KYLE
Clerk

## COURT OF APPEALS
## THIRD JUDICIAL DISTRICT OF TEXAS
## AUSTIN, TEXAS

KEVIN TARR
Appellant,

v.

LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC.,
Appellee,

## ~~REPLY~~ BRIEF OF APPELLEE

On Appeal from the 98th Judicial District Court
of Travis County
Trial Court No. D-1-GN-12-002467
Judge Rhonda Hurley, Presiding

GREGORY B. GODKIN
Texas State Bar No. 24002146
ROBERTS MARKEL WEINBERG BUTLER
HAILEY PC
111 Congress, Suite 1620
Austin, TX 78701
ggodkin@rmwbhlaw.com
Telephone: (512) 279-7344
Fax: (713) 840-9404

Attorneys for Appellee

1

## STATEMENT REGARDING ORAL ARGUMENT

Because this case was to be decided on Motions for Summary Judgment, and the evidence submitted in support thereof and Responses thereto, Lantana believes that the record clearly demonstrates that the Appellant failed to meet his evidentiary burden, and that the Appellee Lantana met its burden, in obtaining a Final Judgment; thus, oral argument is not necessary or required in this appeal.

## RECORD REFERENCES

In this brief, the following record citation forms will be used:

- Clerk's Record will be cited as "CR[page]."

- Supplemental Clerk's Record will be cited as "SCR[page]."

- Appellant Brief will be cited as "TB[page]."

- The Appendix will be cited as "App-[tab] at [page]."

  - App-A (Final Judgment)

  - App-B (Texas Property Code §5.006)

# TABLE OF CONTENTS

Statement Regarding Oral Argument............................................2

Record References.........................................................................2

Table of Contents......................................................................3-4

Index of Authorities..................................................................5-7

Statement of Facts...................................................................8-16

Summary of Arguments.......................................................16-18

I. Argument

    A. The Trial Court Did Not Err in Granting Favor of Lantana on Its Claim that Tarr was in Violation of the Declaration Use Restriction.............................................................19-32

    B. Tarr's Claim that Lantana failed to give him Proper Notice of the Alleged Notice of the Violation of the Declaration was not Plead and is, therefore, Waived .............................................32-34

II. The Trial Court did not Err in Granting Summary Judgment with Respect to the Affirmative Defenses that Statutory Law Prohibits Enforcement of the Deed Restrictions.............................34-40

III. A. The Trial Court Did Not Erroneously Grant Summary Judgment on Tarr's Counterclaims of the Federal Fair Housing Act and The Texas Fair Housing Act...............................41-46

    B. There is no fact issue with respect to whether the residents are "regarded as disabled" under the third definition of the Fair Housing Act....................................................................47-48

IV. The Trial Court Did Not Err in Awarding Attorneys Fees (which were agreed to by the parties) to Lantana.........................49-52

Conclusion and Prayer..................................................52-53
Certificate of Compliance .................................................54
Certificate of Service.......................................................56
Appendix.........................................................................57

# INDEX OF AUTHORITES

**Cases**

*Abbott v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir.1993)...........36,43

*AHF Cmty. Dev.. LLC v. City of Dallas*, 633 F.Supp.2d 287, 298 (N.D. Tex. 2009).....................................................................................29, 36, 43

*Amedisys, Inc. v. Kingwood Home Healthcare, LLC.* 437 S.W.3d 507, 511 (Tex.2014). ............................................................................20

*Anderson v. New Property Owners' Ass'n of Newport, Inc.,* 122 S.W.3d 378, 390 (Tex.App.-Texarkana 2003, pet. denied).........................52

*Briargrove Park Property Owners, Inc. v. Riner*, 867 S.W.2d 58, 61 (Tex.App.-Texarkana 1993, writ denied)..................................... 51

*Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 313 at FN. 3 (Tex.App.-Houston [1st Dist.] 2010, pet. denied).........40

*Burch v. Coca-Cola Co.,* 119 F.3d 305, 316 (5th Cir.1997)................48

*Cadillac Bar West End Real Estate v. Landry's Restaurant, Inc.,* 399 S.W.3d 703, 707 (Tex. App.-Dallas 2013, pet. denied). ...................*33*

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).................................................................29, 39,43

*City of Houston v. Muse,* 788 S.W.2d 419, 424 (Tex.App.-Houston [1st Dist.] 1990, no writ)..................................................................52

*Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (en banc).............................................................................36-43

*Espinoza v. Victoria Bank Trust Co.,* 572 S.W.2d 816, 827 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.).....................34

*Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 267–68 (Tex.App.-Dallas 2011, pet. denied). ...............33

*Gillebaard v. Bayview Acres Ass'n.*, 263 S.W.3d 342, 347 (Tex.App. – Houston [1st Dist.] 2007, pet. denied)........................................21

*Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000).....................................................................................24

*Inwood North Homeowners' Ass'n, Inc. v. Meier*, 625 S.W.2d 742, 743–44 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ).....................52

*Jim Rutherford Investments, Inc. v. Terramar Beach Community Ass'n*, 25 S.W.3d 845, 853 (Tex.App.-Houston [14th Dist.] 2000, pet. denied.)..............................................................................51

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam)............................................................36-43

*Lund and Westlake Assisted Living, L.L.C. v. Leible*, 1999 WL 546996 *1, *6 (Tex. App. Austin. 1999)...............................................29

*Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 650–51 (Tex.App.-Houston [1st Dist.] 2009, pet. filed)..................................................40

*Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex.App.-San Antonio 2001, no pet.) ..............................................................................33

*McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1318 (S.D.Tex.1997). .................................................................37, 46

*Mendoza v. Fidelty & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980)....................................................................24

*MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986)........................20

*Munson v. Milton*, 948 S.W.2d 813, 815 (Tex.App.-San Antonio 1997, pet. denied). ...............................................................................51

*Nash v. Peters,* 303 S.W.3d 359, 362 (Tex. App. El Paso 2009, no pet...51

*Pebble Beach Prop. Owners' Ass'n v. Sherer,* 2 S.W.3d 283, 291–92 (Tex.App.-San Antonio 1999, pet. denied).......................................52

*Shoemake v. Fogel, Ltd.,* 826 S.W.2d 933, 937 (Tex.1992)................34

*Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 164 (5th Cir.), cert. denied, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996).37,45

## Statutes and Regulations

TEX. PROP.CODE ANN. § 5.006(a).......................14, 18, 49, 51, 52, 56

## Rules

TEX. R. CIV. P. 166a(c).......................................10, 12, 19, 20, 41, 49

TEX. R. CIV. P. 166a(i)..............................................10, 35, 40, 41

TEX.. R. EVID. 902(4).........................................................22

TEX. R. CIV. P. 94.............................................................34

TO THE HONORABLE COURT OF APPEALS:

Appellee, Lantana Southwest Homeowners' Association ("Lantana") files this Reply Brief, pursuant to Texas Rules of Appellate Procedure 38.2 and 38.6, and would respectfully show unto the Court the following:

## STATEMENT OF FACTS

Appellee Lantana Southwest Homeowners Association, Inc. ("Lantana"), is a not-for-profit homeowner's association for a residential subdivision known as Lantana Southwest Single Family Properties located in the city of Austin, Travis County, Texas. (CR6). The Lantana Southwest subdivision is governed by a Declaration of Covenants, Conditions, and Restrictions duly recorded in the records of Travis County, Texas as Document No. 2003181938 (the "Declaration"). (CR10-36). Appellant Kevin Tarr's ("Tarr") property is located within the Lantana's Southwest subdivision and is subject to the Declaration. (CR401, ¶ 40G; CR404 ¶ 49).

Among other restrictions set forth in the Declaration, Article 4.1 requires that the Lots in the subdivision be used solely for single family use. (CR16, ¶ 4.1). The Declaration defines "single family" as "any

8

number of persons related by blood, marriage or adoption, and shall also include foster children and domestic servants." (CR16, ¶ 4.1). Article 4.1 of the Declaration further prohibits a building, outbuilding or portion of either to be built on a Lot for use as income-producing property (and uses as an example a lease to a tenant who does not occupy the entire Lot). (CR16, ¶ 4.1).

Specifically, the use Residential Use Restriction reads as follows:

4.1 Residential Use. All Lots shall be improved and used solely for single family residential use, inclusive of a garage, fencing and such other Improvements as are necessary or customarily incident to residential use. No building, outbuilding or portion of either may be built on a Lot for use as income-producing property (i.e., for lease to tenants who do not occupy an entire Lot). A "single family" shall be defined as any number of persons related by blood, marriage or adoption, and shall also include foster children and domestic servants. This Declaration shall not, however, exclude from a Lot any person who is authorized to so remain by any state or federal law. If this Article 4, Section 4.1 is held to be in violation of any law, this Article 4, Section 4.1 shall be interpreted to be as restrictive as possible in order to preserve as much of the original intent of this Section as is permitted by law. (CR16, ¶ 4.1).

On August 14, 2012, Lantana sued Tarr for breaching the Declaration after he converted his single family property into a duplex, and then began renting his home as an income-producing property to persons not related by blood, marriage, or adoption. (CR5-49).

9

In response to the lawsuit brought by Lantana, Tarr filed an Answer with a litany of affirmative defenses, including the affirmative defense that the Federal and Texas Fair Housing Acts prohibits Lantana from enforcing the Declaration, specifically the Residential Use Restriction. (CR51-84). Tarr also filed a Counterclaim asserting that, by filing the suit and by interfering with Tarr's leasing, Lantana violated the Federal and Texas Fair Housing Act. (CR81, ¶ IV.).

*Lantana's First Motion for Partial Summary Judgment*

On August 26, 2013, over a year after the suit was initially filed, Lantana moved for Partial Summary Judgment on both TRCP 166a(c) Traditional and TRCP 166a(i) No-Evidence grounds as to Tarr's affirmative defenses. (CR168-285). In its No-Evidence Motion for Partial Summary Judgment, Lantana argued that Tarr had the burden of establishing a "handicap" under the Federal Fair Housing Act and a "disability" under the Texas Fair Housing Act to support his affirmative defenses and that, in spite of over a year of litigation and discovery, he failed to meet his burden and the No-Evidence Summary Judgment should be granted in Lantana's favor as to the Fair Housing Act affirmative defenses. (CR170-173). In his Response, Tarr submitted an

10

Affidavit wherein he stated all tenants are required to have a "handicap" as defined by the Federal Fair Housing Act in that they are required to have a drug or alcohol addiction for which they are seeking "recovery," and that all tenants are required to have a "disability" as defined by the Texas Fair Housing Act, in that they are required to have a drug or alcohol addiction for which they are seeking recovery. (CR294-295).

The Court (Judge Stephen Yelenosky) reviewed the briefing provided by Lantana and Tarr, reviewed Tarr's affidavits, heard arguments, and ultimately ruled that Tarr had failed to meet his required burden in producing evidence of his affirmative defense of the Federal and Texas Fair Housing Act because he had not produced the required evidence necessary to establish that his renters were afforded protections by the Acts. (CR297). The Court, therefore, granted the No-Evidence Summary Judgment against Tarr's affirmative defenses of the Federal and Texas Fair Housing Act. (CR297).

*Lantana's Second Motion for Partial Summary Judgment*

Lantana filed a second Motion for Partial Summary Judgment on January 1, 2014. (CR298-416). The Motion for Partial Summary

11

Judgment included a TRCP 166a(c) Traditional Summary Judgment as to Tarr's counterclaims for the Federal and Texas Fair Housing Act. (CR298-416). The other appeal-relevant portion of the Partial Summary Judgment sought a TRCP 166a(c) Traditional Summary Judgment as to Lantana's breach of Declaration claim against Tarr. (CR298-416). Lantana also filed a Reply Brief to Tarr's Response, which was also considered by the Court. (CR420-495; CR496-497).

The bases for the Traditional Motion for Summary Judgment as to Tarr's Federal and Texas Fair Housing Act causes of action were two-fold: first, no fact issue then existed as to said claims since the trial court had already ruled that the renters were not afforded protections under the Acts since they were not handicapped or disabled as defined by the Acts. (CR298-301). Secondly, even if the court had not already ruled on the issue, summary judgment was still proper because Tarr had (once again) failed to produce the required evidence in his Response to the Second Motion for Partial Summary Judgment that the renters were qualified individuals falling within the afforded protections of the Acts because they are handicapped or disabled, a required element of

12

establishing the Fair Housing Act causes of action (for which he has the burden). (CR430-432).

The Court (Judge Eric Shepperd) reviewed the Motion, Tarr's Response, the Reply, as well as all evidence presented by Tarr in his attempt to establish the required element of proof that the residents were handicapped or disabled as defined by the Acts, and he heard argument of counsel, and subsequently granted partial summary judgment as to Tarr's Counterclaims for the Federal and Texas Fair Housing Acts. (CR497-498).

Lantana further sought a Traditional Summary Judgment as to its breach of Declaration claim against Tarr in its second Motion for Partial Summary Judgment. (CR304-305). In the motion, Lantana established all of the required elements to prove that ¶4.1 Use Restriction of the Declaration was breached by Tarr. (CR304-305; CR428-430). Because Lantana was able to establish all of the elements of a breach of the Declaration, the trial court granted Lantana's Second Motion for Partial Summary Judgment as to the breach of the Declaration. (CR496).

*Lantana's Motion for Final Summary Judgment*

13

On June 12, 2014, Lantana filed a Motion for Final Summary Judgment whereby it argued that, because Tarr's affirmative defenses and counterclaims, including the affirmative defenses and counterclaims of the Federal and Texas Fair Housing Act, were all subject to prior Motions for Summary Judgment, and because the trial court had ruled as a matter of law that Tarr was in breach of the Declaration, it was entitled to a Final Summary Judgment seeking a permanent injunction consistent with the Declaration. (CR499-605). Lantana also sought its attorneys' fees pursuant to the Texas Property Code §5.006. (CR499-605).

Tarr filed a Response and a Motion for Reconsideration. (CR606-613). Tarr's Response focused on the attorney's fees, but he did not attempt to refute Lantana's right to an injunction. (CR606-613). Tarr failed to set the Motion for Reconsideration for hearing as required by the rules, as such, the Court did not entertain the motion. (CR617).

On July 30, 2014, the Court (Judge Gisela D. Triana) granted Lantana's motion in part only, ordering that Tarr be "commanded to desist and refrain from breaching the Declaration of Covenants, Conditions, Restrictions for Lantana Southwest single family

14

properties." (CR617). The Court did not grant Lantana's request for attorney's fees because Judge Triana felt a fact issue existed, thereby precluding summary judgment. (CR617-620).

*The Final Judgment*

On September 5, 2014, the Court (Judge Amy Clark Meachum) entered a Final Judgment which incorporated the orders from the three-partial summary judgments. (SCR70-72). The Final Judgment (which she termed "Agreed") also incorporated an agreement by and between counsel for Lantana and Tarr whereby the parties agreed that $88,000.00 are reasonable and necessary fees for the prosecution and defense of the lawsuit filed by Lantana up to the signing of the Agreed Final Judgment, and further agreed that $35,000.00 are reasonable and necessary fees to be paid to Lantana should Tarr file an unsuccessful appeal of the cause to the Texas Court of Appeals. (SCR70-72).

This Final Judgment contained an error regarding a date of the first partial summary judgment, which was corrected when, on October 28, 2014, the trial court (Judge Rhonda Hurley) entered its Final Modified Judgment. (CR621-624).

15

Tarr filed a Motion for New Trial which extended the trial court's preliminary power, but never set said Motion for New Trial for hearing so it was never considered by the trial court. (SCR73-85).

Tarr filed a Notice of Appeal on November 17, 2014. (CR625-627).

## SUMMARY OF ARGUMENT

In his Appellate Brief, Tarr begins the "Argument" section by stating that "the disjointed and piecemeal manner in which the issues were presented to five different judges of the Travis County trial bench confused the issues in the trial court and complicates the presentation of the issues on appeal." (TB Pg. 16). This position could not be further from the truth, both factually and legally. Tarr's case, and this appeal, begins and ends with the fact that after over a year of discovery and litigation, Tarr failed to meet his required evidentiary burden in proving that the Federal and Texas Fair Housing Acts afforded his renters protections because he was unable to produce the required evidence to establish a "handicap" or "disability" in responding to Lantana's First and Second Motions for Partial Summary Judgment. Tarr had two different opportunities to meet his required evidentiary burden in responding to the Motions for Partial Summary Judgment,

16

and he had two other opportunities to argue the required evidence at a Motion for Reconsideration and his Motion for New Trial, neither of which he even set for a hearing; thus, they were never considered by the trial court. At all opportunities, Tarr failed to meet his burden.

Again, the issue is a simple one: Tarr failed to meet his required burden of producing evidence to meet the most critical element of his Federal and Texas Fair Housing Acts affirmative defenses and causes of action. All of the well-respected Travis County Judges who reviewed the briefing and evidence presented followed the law and ruled correctly.

Because Tarr failed to meet his required evidentiary burden of proof, all of the rhetoric set forth in both his Responses to the Motions for Partial Summary Judgments, and now in his Appellate Brief, that the Fair Housing Acts protect group homes for persons falling within the purview of the Federal and Texas Fair Housing Act is of absolutely no relevance as Tarr failed to establish that the renters are qualified individuals afforded protections under the Acts. This case has never been about whether the Fair Housing Acts affords protections to qualified individuals. That is not subject to dispute nor disagreed to by

Lantana. The issue is Tarr's failure to meet his required evidentiary burden in establishing the applicability of the Federal and Texas Fair Housing Acts, which he failed to do at the trial court level.

What was left in the case after Tarr failed to meet his required burden of establishing the applicability of the Fair Housing Act protections was an admitted breach by Tarr of the Use Restriction Declaration.

There were no fact issues left, as Lantana had proven, as a matter of law, that Tarr was in breach of the Declaration. The injunction was proper under the Texas Property Code, and the attorneys' fees that Tarr is complaining of in his appeal were actually agreed to in the Final Judgment. They were also required (as a matter of law) under §5.006 of the Texas Property Code.

As set forth below, all of the trial court judges carefully looked at the requirements that both Tarr and Lantana had under the law and, following a review of each parties' respective burdens, the issues presented, the law, and the evidence, properly ruled in Lantana's favor.

# I.

## ARGUMENT

### A. The Trial Court did not Err in Granting Summary Judgment in Favor of Lantana on its Claim that Tarr was in Violation of the Declaration's Use Restriction

In its Second Motion for Partial Summary Judgment, Lantana sought a TRCP 166a(c) Traditional Summary Judgment as to Tarr's Counterclaims of his Federal and Texas Fair Housing Act causes of action, as well as a Traditional Summary Judgment as to Lantana's breach of Declaration claim against Tarr. (CR298-416).

The focus of the "Issue Presented" in this appeal is whether the trial court properly granted summary judgment as to Lantana's breach of Declaration cause of action against Tarr, which is separate and apart from the Motion for Partial Summary Judgment as to Tarr's Fair Housing Act counterclaims as the Texas Rules of Civil Procedure specifically allow for a party seeking to recover upon a claim made, anytime after the adverse party has appeared or answered, to move for a summary judgment in its favor upon all or any part of its claims. *See* TRCP 166a(c).

At the time Lantana filed it Motion for Partial Summary Judgment as to its breach of Declaration cause of action against Tarr, all of Tarr's affirmative defenses, including his affirmative defenses of the Federal and Texas Fair Housing Act, were no longer viable in that the trial court had previously granted a No-Evidence Motion for Partial Summary Judgment as to those affirmative defenses. (CR297).

Because there were no viable, live affirmative defenses as to Lantana's breach of Declaration cause of action, its only burden was to show (1) that there was no genuine issue of material fact and (2) that it was entitled to judgment as a matter of law. *See* TRCP 166a(c); *Amedisys, Inc. v. Kingwood Home Healthcare, LLC.* 437 S.W.3d 507, 511 (Tex.2014). To prove it was entitled to summary judgment, Lantana was required to establish each element of its claim as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986).

The specific portion of the Declaration the subject of Lantana's cause of action and Motion for Partial Summary Judgment was paragraph 4.1 of the Declaration, "Residential Use," which reads as follows:

> 4.1 Residential Use. All Lots shall be improved and used solely for single family residential use, inclusive of a garage,

20

fencing and such other Improvements as are necessary or customarily incident to residential use. No building, outbuilding or portion of either may be built on a Lot for use as income-producing property (i.e., for lease to tenants who do not occupy an entire Lot). A "single family" shall be defined as any number of persons related by blood, marriage or adoption, and shall also include foster children and domestic servants. This Declaration shall not, however, exclude from a Lot any person who is authorized to so remain by any state or federal law. If this Article 4, Section 4.1 is held to be in violation of any law, this Article 4, Section 4.1 shall be interpreted to be as restrictive as possible in order to preserve as much of the original intent of this Section as is permitted by law. (CR16, ¶ 4.1).

At the time Lantana presented its Motion for Partial Summary Judgment as to the breach of Declaration, meeting its burden in establishing all the elements of the cause of action was relatively simple as the evidence (through admissions by Tarr and additional undisputed facts) established all of the required elements: the existence of a valid and enforceable Declaration, and the breach of said valid and enforceable Declaration.

To prevail on its Motion for Partial Summary Judgment as to the breach of Declaration, Lantana had the burden of proof to show that the restriction was valid and enforceable. *Gillebaard v. Bayview Acres Ass'n.*, 263 S.W.3d 342, 347 (Tex.App. – Houston [1st Dist.] 2007, pet. denied).

21

Proof of a valid Declaration was met by Lantana. Specifically, a certified copy of the Declaration of Covenants, Conditions, and Restrictions for Lantana Southwest single family properties was submitted to the Court as evidence in support of Lantana's Motion for Partial Summary Judgment prior to the Court's ruling and hearing on said motion. (CR433-473). Pursuant to Texas Rules of Evidence 902(4), this certified copy was self-authenticating.

Lantana further proved the Declaration was valid and enforceable to Tarr's Property, and that he was aware of the residential Use Restriction. Specifically, Tarr testified that the Declaration in question was applicable to his property:

Question: OK. When you purchased the home, were you aware that there were Deed Restrictions applicable to that property?

Answer: Yes

Question: OK. And I'm not going to go through all of them, but the one that is particularly important in our case would be the fact that it is a single family use deed restricted community. Did you understand that at the time you purchased the home.

Answer: Yes.

22

Question: OK. Were you provided documents from the Seller that showed you Declarations, etc., that this was a single family residence deed restricted community?

Answer: Yes.

Question: Okay. What does that mean to you?

Answer: That it's a house to be used for single family.

(CR414 Pg. 13, ll. 6-22).

Tarr also wrote a self serving letter to his neighbors in response to their concern that one of his renters was a registered sex offender for child molestation and, in the letter, he specifically says that his property is subject to single family use restrictions. (CR366). Thus, there is no fact issue as Tarr admits that the Use Restriction is valid and enforceable.

Secondly, Tarr's own counterclaim specifically states that he is a "member/shareholder of Lantana," and he even tries to argue (albeit without merit) that "Lantana Southwest's own deed restrictions protect Tarr's sober house group home." (CR404, ¶ 49; CR401, ¶ 40G). Further, the fact that the Declarations are valid and enforceable, and that Tarr's property is subject to said Declarations, is not subject to Tarr's appeal as, in his Appellate Brief, he specifically represents that "[his] property

23

is located within the Lantana Southwest subdivision and is subject to homeowners' association deed restrictions," including the Residential Use Restriction the subject of Lantana's breach of Declaration cause of action against him. (TB Pg. 4-5).

All of these statements constitute judicial admissions and the fact that the Declaration is valid and applicable to Tarr's property is conclusively established. As such, there is no fact question regarding the same. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000); *Mendoza v. Fidelty & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980).

The next required element, that Tarr breached ¶ 4.1 of the Declaration, was also easily met as a matter of law because he had admitted that he was violating the Use Restriction by renting rooms to groups of unrelated individuals. Specifically, in Tarr's own pleadings, he states that "[a]s Tarr's August 9. 2012 letter and advertisement reflect, Tarr is operating a sober house, group home..." (CR385). This is a judicial admission establishing the required element. *See Horizon* at 905; *See Mendoza* at 694.

Tarr also testified at the time of his deposition that he currently had ten renters, but at one point had a total of sixteen, and that he was earning income of $6,000.00 to $8,000.00 per month.

Q. Is the Oteka residence or any entity related to the Oteka residence set up or associated in any way with a not for profit?

A. No.

Q. How much money on average do you gross each month from the recovery home?

A. It fluctuates.

Q. On average.

A. I don't know exactly.

Q. How much do you charge residents?

A. Currently between 6- and 800 per month.

Q. And you currently have 10?

A. Approximately, yes.

Q. So, that's 6,000 to $8,000 a month?

A. That's correct.

Q. At one point you had 16?

25

A. Yes.

(CR415 Pg. 73, ll. 8-24).

Clearly, there is no genuine issue of material fact that his Lot is being utilized for multi-family residential use, which is in direct violation of the Residential Use language: "[a]ll Lots shall be approved and used solely for single family residential use," and "single family shall be defined as any number of persons related by blood, marriage or adoption, and shall also include foster children and domestic servants." (CR16, ¶ 4.1).

Further, his single family property home has been modified for use as income-producing duplex. Specifically, Tarr discusses his "brand new," (one month old) duplex in an advertisement:

> "Why live in a smaller or older house for the same price as a brand new, (one month old) custom built, 5,400 sq. ft. mansion with a 2,800 sq. ft. completely private duplex? Rental house is 100% private duplex with a separate private front door and private garage door entrances and is sealed off from the downstairs house." (CR374). "This is one of the most affordable, upscale townhomes on Craigslist! It is a custom built, brand new, 1.5 year old, 2 story house that is valued at $525,000.00 that is divided between an upstairs and downstairs with two complete houses inside a 5,400 sq. ft. mansion. Currently, the upstairs townhouse is for rent." (CR372).

26

Clearly, Tarr's home is in violation of the ¶ 4.1Residential Use restriction language as well: "no building, out building or portion of either may me built on a Lot for use as income-producing property (i.e., for lease to tenants who do not occupy an entire Lot." (CR16, ¶ 4.1).

The trial court looked at all of the evidence presented, including Plaintiff's own pleadings and admissions, whereby he admits that he is violating the Declaration's Use Restriction, and ruled in Lantana's favor for the breach of Declarations cause of action against Tarr. (CR496).

In his Appellant Brief, Tarr spends a considerable amount of time attempting to convince this Court that what is a clear breach of the Declaration is not, in fact, a breach. Specifically, his first focus is his attempt to assert that Lantana failed to meet its summary judgment burden in establishing a breach of the Declaration by focusing on his defunct affirmative defenses of the Federal and Texas Fair Housing Act. (TB 21-24). Specifically, he argues that the Fair Housing Acts protect group homes. (TB21). This is not in dispute. Lantana has not in the past, nor is it now, asserting that the Federal and Texas Fair Housing Acts **when applicable to a particular property**, i.e., after those claiming protections under the Acts meet their burden of proof in

27

establishing a handicap or disability, afford certain protections against single family use restrictions.

What Tarr is wholly and completely missing in his position as it relates to the Motion for Partial Summary Judgment granted in Lantana's favor against Tarr for the breach of Declaration cause of action is that Tarr had already lost a No-Evidence Motion for Partial Summary Judgment as to his Federal and Texas Fair Housing Act affirmative defenses and they were no longer a viable defense to Lantana's breach of Declaration Motion for Partial Summary Judgment. (CR412).

Tarr then attempts to argue in his Appellant Brief that it was Lantana's burden to prove a negative: that Tarr's use of the Property does not qualify as a group home for handicapped persons because ¶ 4.1 of the Declaration specifically states "this Declaration shall not, however, exclude from a Lot any person who is authorized to still remain by any state or federal law." (TB23-24). This argument has no merit. This portion of the Declaration simply says that if a person is afforded protections under the law, like under the Fair Housing Act, those protections trump the Use Restriction. But to be afforded these

protections, a person claiming federal protections must prove they fall within the purview of the protections, which Tarr failed to do. It is the burden of the person claiming protections to prove they are qualified individuals falling within the purview of those protections. *See AHF Cmty. Dev. LLC v. City of Dallas*, 633 F.Supp.2d 287, 298 (N.D. Tex. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a violation of deed restrictions are shown, the burden shits to the person claiming Fair Housing Act protection to provide a defense on his or her failure to comply with the deed restriction. *See Lund and Westlake Assisted Living, L.L.C. v. Leible*, 1999 WL 546996 *1, *6 (Tex. App. Austin. 1999) (not designated for publication). Tarr had already argued and lost his claim that the renters fell within the purview of protections afforded by the Fair Housing Acts, so this defense was no longer viable and all Lantana needed to prove was a breach of the Declaration, which it clearly did giving rise to summary judgment.

Further, it is without dispute that Tarr modified his single family residence and converted it to a duplex for the purposes of renting it out to a large number of unrelated individuals, thereby breaching another

29

portion of the Declaration which states "no building, out building or portion of either may be built on a Lot for use as income-producing property (i.e., for lease to tenants who do not occupy an entire Lot.")" (CR16, ¶ 4.1). In his appellate brief, Tarr attempts to avoid the clear breach of this portion of the Declaration by arguing that the use restriction is an attempt to prohibit the construction of an improvement for the purposes of producing income and that there is no proof his property is a duplex. (TB24-27, TB28-29).

It is frankly unclear as to why Tarr would attempt this argument as Tarr's own advertisements from Craigslist, that were presented as evidence by Lantana in its Motion for Partial Summary Judgment specifically, say that his single family residence has been built into a "rental house" that is a "**100% private duplex with a separate private front door and private garage door entrance and is sealed off from the downstairs house.**" (CR374).

There are numerous advertisements by Tarr on Craigslist whereby he discusses his "brand new," (one month old) duplex:

> "Why live in a smaller or older house for the same price as a brand new, (one month old) custom built, 5,400 sq. ft. mansion with a 2,800 sq. ft. completely private duplex? Rental house is 100% private duplex with a separate private

front door and private garage door entrances and is sealed off from the downstairs house." (CR374). "This is one of the most affordable, upscale townhomes on Craigslist! It is a custom built, brand new, 1.5 year old, 2 story house that is valued at $525,000.00 that is divided between an upstairs and downstairs with two complete houses inside a 5,400 sq. ft. mansion. Currently, the upstairs townhouse is for rent." (CR372).

Clearly, in addition to violating the single family restriction on the unrelated renters renting rooms in the home, Tarr also violated the Declaration by building a duplex for use as an income-producing property (i.e., for lease to tenants who did not occupy an entire Lot) (CR 16 ¶ 4.1).

Tarr also testified that he generates income of $6,000.00 to $8,000.00 per month from the rentals. (CR304). In his Appellate Brief, Tarr focuses on "profits" (or lack thereof) as opposed to "income" in arguing that there is no proof of a breach and states that Lantana has misrepresented Tarr's testimony in its motion when it stated "that this is a for-profit endeavor in which he is making at least $6,000.00 to $8,000.00 per month." (TB24-25). Tarr then admits in his Appellate Brief (thereby once again proving Lantana's point) that Tarr has "gross collections between $6,000.00 and $8,000.00 each month." (TB25). Wordsmithing as between "gross collections" and "profit" does not

31

matter legally as Tarr admitted in his deposition, and now admits in his own Appellate Brief, that he was receiving income of at least $6,000.00 to $8,000.00 per month. (CR415; TB25).

Q. How much money on average do you gross each month from the recovery home?

A. It fluctuates.

Q. On average.

A. I don't know exactly.

Q. How much do you charge residents?

A. Currently between 6- and 800 per month.

Q. And you currently have 10?

A. Approximately, yes.

Q. So, that's 6,000 to $8,000 a month?

A. That's correct.

Q. At one point you had 16?

A. Yes.

(CR415 Pg. 73, ll. 12-24).

This testimony, coupled with the fact that he has admitted that his home is a duplex that is "income producing" and that it is being

32

rented to unrelated individuals not occupying the entire Lot, demonstrates that there is no fact issue, and that Lantana proved as a matter of law at the trial court level that Tarr was in breach of the Declaration (twice) giving rise to the summary judgment.

**B.** ***Tarr's claim that Lantana failed to give him proper notice of the alleged violations of the Declaration was not plead and it is, therefore, waived.***

Tarr argues that section 12.8 of the Declaration requires that Lantana give 10-days notice of an alleged violation of the deed restriction before taking any action to enforce said restrictions. (TB46; CR34, ¶12.8). Tarr argues that Lantana's alleged failure to give him proper notice is "fatal" to Lantana's claim. (TB47).

Courts have consistently held that lack of notice is an affirmative defense." *Cadillac Bar West End Real Estate v. Landry's Restaurant, Inc.*, 399 S.W.3d 703, 707 (Tex. App.-Dallas 2013, pet. denied). *See, e.g., Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 267–68 (Tex.App.-Dallas 2011, pet. denied) (failure to give required statutory notice is affirmative defense); *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex.App.-San Antonio 2001, no pet.) (failure to give notice of intent to accelerate contractual alimony payments is

affirmative defense); *Espinoza v. Victoria Bank Trust Co.*, 572 S.W.2d 816, 827 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.) (failure to give notice of intent to accelerate maturity of promissory note is affirmative defense).

An affirmative defense is waived if it is not pleaded. *See Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 937 (Tex.1992) (citing Tex. R. Civ. P. 94).

Tarr failed to plead said affirmative defense. (CR51-84). Because Tarr failed to plead the affirmative defense of notice, it is waived and is of no defense to Lantana's breach of Declaration cause of action.

## II.

### The Trial Court Did Not Err in Granting Summary Judgment with Respect to the Affirmative Defenses that Statutory Law Prohibits Enforcement of the Deed Restrictions

On August 26, 2013, over a year after the suit was initially filed, Lantana moved for partial summary judgment on both traditional and no-evidence grounds as to Tarr's affirmative defenses. (CR168-285). In its motion, Lantana argued that Tarr had the burden of establishing a "handicap" under the Federal Fair Housing Act and a "disability" under the Texas Fair Housing Act and that, in spite of over a year of litigation

34

and discovery, he failed to meet his burden and summary judgment should be granted in Lantana's favor. (CR170-173).

In his Response, the only "evidence" submitted by Tarr in an attempt to meet his burden under the Fair Housing Acts and under TRCP 166a(i) was an affidavit that said nothing more than the following as it relates to a "handicap" and "disability": "all tenants of my group home are required to have a "handicap" as defined by the Federal Fair Housing Act, and they are required to have a drug or alcohol addiction for which they are seeking recovery;" "all tenants of my group home are required to have a "disability" as defined by the Texas Fair Housing Act, in that they are required to have a drug or alcohol addiction for which they are seeking recovery." (CR294-295).

Even under the most liberal standard, Tarr's affidavit woefully fails to provide any evidence necessary to meet his evidentiary burden in response to the No-Evidence Motion for Partial Summary Judgment as to his Fair Housing Act affirmative defenses.

A party claiming protections under the Fair Housing Act will bear the burden at trial on its Fair Housing Act claims, and a defendant to those claims can obtain summary judgment by pointing the court to the

absence of evidence of an essential element of the claim in question. *See AHF Cmty. Dev. LLC v. City of Dallas*, 633 F.Supp.2d 287, 298 (N.D. Tex. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once it does so, the party claiming Fair Housing Act protections must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex*, 106 S.Ct. 2548; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam). (Fitzwater, J.). Summary judgment is mandatory if the Fair Housing Act claimant fails to meet his or her burden. *See Little*, 37 F.3d at 1076.

Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See Celotex*, 106 S.Ct. 2505; *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc).

Tarr's affidavit, which simply says that his residents are afforded protections under the Federal and Texas Fair Housing Acts because

they "have a drug or alcohol addiction for which they are seeking recovery," is not evidence required to prove protections afforded under the Acts.

"The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *See Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir.), cert. denied, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996). Therefore, a person claiming to be disabled because of alcoholism must still establish that he satisfies the requirements of the definition of a disability under the ADA and its accompanying regulations. *McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1318 (S.D.Tex.1997). (addressing alcoholism under the ADA).

Whether impairment substantially limits a major life activity must be determined, not by how "disabling" the impairment sounds, but rather by the impact of the impairment on the individual. *Id.*

Tarr's statement that his residents are required to have a drug or alcohol addiction is nothing more than a statement that they have "impairment," but it offers none of the required evidence to establish a

37

handicap or disability. *Id.* Thus, Tarr failed to meet his evidentiary burden of establishing a physical or mental impairment which substantially limits one or more of such person's major life activities.

Evidence that, when under the influence of drugs and alcohol it impacted a person's ability to walk, talk, think, sleep, and work is not evidence of a handicap or disability and "far more is required to trigger coverage." *See Burch v. Coca-Cola Co.,* 119 F.3d 305, 316 (5th Cir.1997). "Permanency, not frequency, is a touchstone of a substantial living impairment. *Id. Burch* involved an alcoholic claiming a disability and the Court determined that even with testimony from the Plaintiff and his treating physician that he was significantly impacted in his ability to live and work, these were not permanent impairments and did not offer protections under the purview of the Americans with Disabilities Act. *Id.*

It appears that Tarr has all but conceded in his Appellate Brief that his affidavit failed to meet his evidentiary burden. None of the cases cited by Tarr in his Appellant Brief refute the applicable case law under both Texas and this Circuit Court of Appeals but is instead focused on jurisdictions that have no relationship to the State of Texas

38

or 5th Circuit Court of Appeals authority. (TB34-39). This is by no accident because the case law that is directly on point to the factual scenario of Tarr's renters demonstrates that Tarr failed to meet his evidentiary burden in establishing a handicap or disability as to his Fair Housing Act causes of action.

Tarr then attempts to cite to "later-offered evidence" in support of his position that this Court should ignore the fact that Tarr's initial affidavit provided no evidence in his Response to the No-Evidence Summary Judgment. (TB39, FN 9). Tarr's statement that "the trial court could have reconsidered the summary judgment on the affirmative defenses and considered the later-offered evidence" lacks legal and factual merit in that Tarr did not ask for a Motion for Reconsideration and the "additional evidence" that he cites to was never even presented to the first trial court for consideration because it was filed several months later in Response to Lantana's Second Motion for Partial Summary Judgment, not the First No-Evidence Motion. (SCR 3-37). So they are of no evidence as to the Partial Summary Judgment as to Tarr's Fair Housing Act affirmative defenses.

Further, even if Tarr had set his Motion for Reconsideration, new arguments to defeat summary judgment presented after the trial court granted a summary judgment do not warrant reversal. *See Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 313 at FN. 3 (Tex.App.-Houston [1st Dist.] 2010, pet. denied), *citing Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 650–51 (Tex.App.-Houston [1st Dist.] 2009, pet. filed).

Tarr failed to produce the evidence of a handicap or disability as required to fall within the purview of the Federal and Texas Fair Housing Acts in response to Lantana's No-Evidence Motion for Partial Summary Judgment as to his Fair Housing Act affirmative defense, pursuant to Texas Rules of Civil Procedure 166a(i), and, as such, the trial court's ruling in Lantana's favor was proper and should be upheld.

Tarr also asserts that there is a "fact issue with respect to whether the residents are also "regarded as disabled" under the third definition (of the Fair Housing Act). (TB42-46). This argument also fails as a matter of law. The evidence cited was not produced in Response to the No-Evidence Motion for Partial Summary Judgment.

(CR286-295). Thus, it offers no support to the Fair Housing Act affirmative defenses. *See* TRCP 166a(i).

## III.

### *A. The Trial Court Did Not Erroneously Grant Summary Judgment on Tarr's Counterclaims of the Federal Fair Housing Act and The Texas Fair Housing Act*

Lantana filed a second Motion for Partial Summary Judgment on January 1, 2014. (CR298-416). Lantana also filed a Reply Brief Tarr's Response which was also considered by the Court. (CR420-495; CR496-497). The Motion for Partial Summary Judgment included a Traditional Summary Judgment under TRCP 166a(c) as to Tarr's counterclaims for the Federal and Texas Fair Housing Act. (CR301).

The bases for the Traditional Motion for Summary Judgment as to Tarr's Federal and Texas Fair Housing Act causes of action were two-fold: first, no fact issue then existed as to said claims since the trial court had already ruled that the residents were not afforded protections under the act since they were not handicapped or disabled as defined by the acts. (CR298-301). Secondly, even if the court had not already ruled on the issue, summary judgment was still proper because Tarr had (once again) failed to prove that the residents were qualified individuals

41

falling within the afforded protections of the Acts because they are handicap or disabled, the most critical required element of establishing the Fair Housing Act causes of action for which he has the burden. (CR430-432).

The Court reviewed the briefing provided by Lantana and Tarr, as well as all evidence presented by Tarr in his attempt to establish the required elements of proof that the residents were handicapped or disabled as defined by the acts as well as argument of counsel, and ruled that the partial summary judgment as to Tarr's Counterclaims for the Federal and Texas Fair Housing Acts should be granted. (CR497-498).

Tarr first asserts that the trial court erred in granting the Motion for Partial Summary Judgment as to his Federal and Texas Fair Housing Act claims 1) "because a First Partial Summary Judgment was in err, it cannot negate Mr. Tarr's Counterclaims"; 2) "Even a valid partial summary judgment on Mr. Tarr's statutory affirmative defenses would not negate the Counterclaims." (TB47-51).

A party claiming protections under the Fair Housing Act will bear the burden at trial on its Fair Housing Act claims, and a defendant to

those claims can obtain summary judgment by pointing the court to the absence of evidence of an essential element of the claim in question. *See AHF Cmty. Dev. LLC v. City of Dallas*, 633 F.Supp.2d 287, 298 (N.D. Tex. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once it does so, the party claiming Fair Housing Act protections must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See Celotex,* 106 S.Ct. 2548; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam). (Fitzwater, J.). Summary judgment is mandatory if the Fair Housing Act claimant fails to meet his or her burden. *See Little*, 37 F.3d at 1076.

Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See Celotex* 106 S.Ct. 2505; *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc).

As set forth in the preceding section of this Reply Brief, the partial summary judgment as to Tarr's affirmative defenses of the Federal and Texas Fair Housing Act was absolutely correct because Tarr failed to produce the requisite evidence required to meet his evidentiary burden to avoid said affirmative defense. The Court has already ruled that the renters were not handicapped or disabled, so there was no fact issue. As such, there was no such "erroneous summary judgment on the affirmative defenses" as argued in Tarr's Appellate Brief. (TB47-51).

Tarr's second argument, that even without the First Motion for Partial Summary Judgment granted, there is evidence to establish a "handicap" and "disability" under the Federal and Texas Fair Housing Act cause of action which should have precluded summary judgment, is also without merit. Tarr first attempts to argue that the Court should (once again) reconsider affidavits filed in response to the Second Motion for Partial Summary Judgment to somehow reconsider its First Motion for Partial Summary Judgment as to the affirmative defenses even though Tarr failed to file a Motion for Reconsideration. (TB50-51). As set forth above, Tarr never set a Motion for Reconsideration or presented the new affidavits to the trial court who ruled on the Motion

44

for Partial Summary Judgment as to the affirmative defenses, so that argument is waived.

Tarr then asserts that the affidavits create a fact issue as to whether the residents of his group home were handicapped or disabled within the meaning of the relevant statutes. (TB51). However, as argued by Lantana in its Reply, which was also considered by the trial court, these affidavits (like Tarr's first affidavit) do nothing more than establish that the residents are alleged to suffer from alcohol and drug dependency. (CR430-432; SCR 19-37). This is not evidence of a handicap or disability under the Fair Housing Acts.

"The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *See Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir.), cert. denied, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996). Therefore, a person claiming to be disabled because of alcoholism must still establish that he satisfies the requirements of the definition of a disability under the ADA and its accompanying

regulations. *McKey v. Occidental Chem. Corp.,* 956 F.Supp. 1313, 1318 (S.D.Tex.1997). (addressing alcoholism under the ADA).

Whether impairment substantially limits a major life activity must be determined, not by how "disabling" the impairment sounds, but rather by the impact of the impairment on the individual. *Id.*

Tarr's statement that his residents are required to have a drug or alcohol addiction is nothing more than a statement that they have "impairment," but it offers none of the required evidence to establish a handicap or disability. *Id.* Thus, Tarr failed to meet his evidentiary burden of establishing a physical or mental impairment which substantially limits one or more of such person's major life activities.

Further, evidence that, when under the influence of drugs and alcohol it impacted a person's ability to walk, talk, think, sleep, and work is not evidence of a handicap or disability and "far more is required to trigger coverage". *See Burch v. Coca-Cola Co.,* 119 F.3d 305, 316 (5th Cir.1997). "Permanency, not frequency, is a touchstone of a substantial living impairment. *Id.*

*Burch* involved an alcoholic claiming a disability and the Court determined that even with testimony from the Plaintiff and his treating

46

physician that he was significantly impacted in his ability to live and work these were not permanent impairments and did not offer protections under the purview of the Americans with Disabilities Act. *Id.*

All of the affidavits produced by Tarr in Response to Lantana's Motion for Partial Summary Judgment as to his Fair Housing Act causes of action do nothing more than assert that the renters are "alcoholics" and/or "former drug addicts" and the affidavits go through a litany of arrest for DUI, imprisonment for drug possession, money wasted, and relationships impacted which, as in *Burch*, is of no evidence as the affidavits do not establish a permanent, substantially limiting impairment. (SCR 19-37).

### B. There is no fact issue with respect to whether the residents are "regarded as disabled" under the third definition of the Fair Housing Act

Tarr argues that the residents are regarded as disabled under the Fair Housing Act and cites as evidence an email sent by the former HOA president to the management company. (TB42-45).

Tarr's "evidence" actually proves there is no fact issue. Specifically, the e-mail sent, per Tarr "clearly demonstrates that the

47

reason the HOA does not want Westlake recovery house residents living in the neighborhood is precisely because the home is a group home for recovering alcoholics and drug addicts." (TB45). The reason this is not a fact issue (and actually proves as a matter of law that there wasn't a discrimination based upon a person that is "regarded as disabled" is because simply regarding someone as an "alcoholic or drug addict" without evidence that they actually <u>believe</u> that the person has a physical impairment that substantially limits a major life activity (when in fact they do not) is not a violation of the Federal Housing Act. "Regarding [a claimant] as anything other than [what they] actually [are]: an alcoholic whose alcoholism did not impair any major life activity, including the major life activity of working, is insufficient to support a 'regarded as having an impairment' claimant." *See Burch v. Coca-Cola* at 322. Because there is no fact issue as to the "regarded as disabled" prong of the Fair Housing Act, Summary Judgment was proper.

## IV.

### The Trial Court Did Not Err in Awarding Attorneys Fees (which were agreed to by the parties) to Lantana

On June 12, 2014, Lantana filed a Motion for Final Summary Judgment whereby it argued that because Tarr's affirmative defenses and counterclaims, including the affirmative defenses and counterclaims of the Federal and Texas Fair Housing Act, had all been subject to prior Motions for Summary Judgment, and because the trial court had ruled as a matter of law that Tarr was in breach of the Declaration, it was entitled to a Final Summary Judgment pursuant to TRCP 166a(c) seeking a permanent injunction consistent with the Declaration. (CR499-605). Lantana also sought its attorneys' fees pursuant to the Texas Property Code §5.006. (CR499-605). The Court partially granted the summary judgment and ordered Tarr to desist and refrain from breaching the Declarations of Covenants, Conditions, and Restrictions for Lantana Southwest single family properties, but it denied the attorneys fees because it felt there was a fact issue on the fees. (CR617-620).

Tarr's entire premise for this his argument fails because the attorney's fees were not awarded based on an injunction but were

instead awarded pursuant to the Texas Property Code after Lantana proved, as a matter of law, that Tarr was in breach of the Declaration and, further, the attorney's fees that he is now complaining of were actually agreed to by Tarr and his prior counsel.

Specifically, the attorney's fees were not awarded by the Court when requested in Lantana's Third Motion for Summary Judgment. (CR617-620). While that court did issue an injunction, the court found there was a fact issue as to the fees and did not award them. (CR617-620).

Instead, the attorney's fees were later agreed to by the parties and were made part of a Modified Final Judgment:

> The Court finds based on the signature of their counsel that Lantana and Tarr **have agreed that $88,000.00 are reasonable and necessary fees for the prosecution and defense of the above-referenced lawsuit** by Lantana up to the signing of this Final Modified Judgment. Lantana and Tarr further agreed that $35,000.00 are reasonable and necessary fees to be paid to Lantana should Tarr file and unsuccessful appeal of this case to the Texas Court of Appeals. This agreed amount, however, is the maximum amount to be paid by Tarr to Lantana in the event of said appeal and all amounts due and payable must have been incurred by or on behalf of Lantana. No part of this Final Modified Judgment or the prior orders of this Court are agreed to by Tarr **except the amount of reasonable and necessary attorney's fees set forth above**, and Tarr

50

reserves his right to appeal from every other ruling in those prior orders. (CR621-CR624).

However, even if the fees had not been agreed to by Tarr, the trial court was required, pursuant to Texas Property Code §5.006, to award said fees because Lantana was the "prevailing party". *See* Texas Property Code §5.006. Specifically, all that was required for Lantana to satisfy the "prevailing party" requirement under the Code was to prove that Tarr had violated a deed restriction: "[n]or is there any requirement in such suits that the plaintiff must plead monetary damages to be labeled the prevailing party on a finding that a defendant violated a deed restriction. Rather, the plaintiff simply must prove that the defendant intended to do an act which would breach the deed restriction or that the defendant violated the deed restriction." *Nash v. Peters*, 303 S.W.3d 359, 362 (Tex. App. El Paso 2009, no pet.). *See also Jim Rutherford Investments, Inc. v. Terramar Beach Community Ass'n*, 25 S.W.3d 845, 853 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Munson v. Milton*, 948 S.W.2d 813, 815 (Tex.App.-San Antonio 1997, pet. denied). "If the court so finds, the plaintiff is the prevailing party." *Nash* at 362. *See also Briargrove Park Property Owners, Inc. v. Riner*, 867 S.W.2d 58, 61 (Tex.App.-Texarkana 1993,

writ denied); *City of Houston v. Muse*, 788 S.W.2d 419, 424 (Tex.App.-Houston [1st Dist.] 1990, no writ). As the successful prosecutor of the breach-of-deed restriction, the court must award him attorneys' fees. Tex. Prop.Code Ann. § 5.006(a); *Anderson v. New Property Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 390 (Tex.App.-Texarkana 2003, pet. denied); *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 291–92 (Tex.App.-San Antonio 1999, pet. denied); *Inwood North Homeowners' Ass'n, Inc. v. Meier*, 625 S.W.2d 742, 743–44 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ).

Because Lantana was the "prevailing party" pursuant to Texas Property Code § 5.006, and because Tarr agreed to said fees in the Final Modified Judgment, the awards of fees was proper and should be upheld.

## CONCLUSION AND PRAYER

After a year of litigation and discovery, Tarr was unable to meet his evidentiary burden in producing the requisite evidence needed to establish that his breach of the Residential Use Declaration restriction was protected by the Federal and Texas Fair Housing Act. The respected Travis County Judges who reviewed all of the briefing and

52

evidence presented by both parties, and who eventually ruled in favor of Lantana on its breach of Declaration cause of action against Tarr, and against Tarr on all of his causes of action, followed the law in what led to a Final Judgment in Lantana's favor. Because Tarr failed to meet his burden, and because Lantana met its burden, Lantana respectfully requests that this Honorable Court uphold the Final Judgment in Lantana's favor.

Respectfully submitted,

ROBERTS MARKEL WEINBERG BUTLER HAILEY PC

GREGORY B. GODKIN
Texas State Bar No. 24002146
111 Congress, Suite 1620
Austin, TX 78701
ggodkin@rmwbhlaw.com
Telephone: (512) 279-7344
Fax: (713) 840-9404
**Attorneys for Lantana Southwest Homeowners' Association, Inc.**

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rules of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 10,097 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text. In making this certificate of compliance, I have relied on the word count provided by the software used to prepare this document.

_Gregory B. Godkin_

Gregory B. Godkin

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing Reply Brief of Appellee on all counsel of record on March 18, 2015, as listed below:

*Via Electronic Mail: Matthew@PloegerLaw.com*
Mr. Matthew Ploeger
Law Office of Matthew Ploeger
901 S. Mopac Expressway, Suite 300
Barton Oaks Plaza, Building One
Austin, Texas 78746
(512) 298-2088 Phone

*Attorney for Kevin Tarr*

GREGORY B. GODKIN

# APPENDIX

Appendix A: Final Judgment)

Appendix B: Texas Property Code §5.006)

# Appendix A

Notice sent: (Final) Interlocutory   None

Disp Parties:_____ ALL

Disp code: (CVD) CLS ___4618____

Redact pgs:_____ —

Judge___ ACM ___ Clerk __BH____

CAUSE NO. D-1-GN-12-002467

Filed in The District Court
of Travis County, Texas

SEP 03 2014

At_____ M.
Amalia Rodriguez-Mendoza, Clerk

| | | |
|---|---|---|
| LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC., *Plaintiff/Counter-Defendant,* | § § § § § § § § § | IN THE DISTRICT COURT OF |
| VS. | | TRAVIS COUNTY, TEXAS |
| KEVIN TARR, *Defendant/Counter-Plaintiff* | | 98TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

Plaintiff LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC., ("Plaintiff" or "Lantana") filed this lawsuit (the "lawsuit") on or about August 14, 2012 against Kevin Tarr ("Tarr").

On or about August 27, 2012 Tarr filed his Answer and Counterclaim.

On September 9, 2013 the Honorable Stephen Yelenosky signed an Order Granting Lantana's No Evidence Motion for Partial Summary Judgment as to Tarr's Federal Fair Housing Act, Texas Fair Housing Act, American's With Disabilities Act, and Federal Rehabilitation Act affirmative defenses. The Court hereby includes said Order by reference in this Agreed Final Judgment.

On March 24, 2014, the Honorable Eric Shepperd signed an Order Granting Lantana's Traditional Motion For Partial Summary Judgment as to Tarr's Texas and Federal Fair Housing Act, Texas and Federal Americans With Disabilities Act, Federal Rehabilitation Act, 1st and 14th Amendment rights and Texas Constitution, City of Austin's Code of Municipal Ordinances and Austin's Municipal Public Policy, and Lantana's violation of its own residential use deed restrictions causes of action. Judge Shepperd also Granted Lantana's No Evidence Motion for Partial Summary Judgment as to Tarr's 1st and 14th Amendment rights and Texas Constitution,

City of Austin's Code of Municipal Ordinances and Austin's Municipal Public Policy, and Lantana's violation of its own residential use deed restrictions causes of action. The Court hereby includes said Order by reference in this Agreed Final Judgment.

On March 24, 2014, Judge Shepperd also Granted Lantana's Traditional Motion for Partial Summary Judgment as to its breach of Lantana's Declaration of Covenants, Conditions, and Restrictions cause of action against Tarr. The Court hereby includes said Order by reference in this Agreed Final Judgment.

On July 30' 2014, the Honorable Gisela D. Triana partially Granted Lantana's Motion for Final Summary Judgment whereby she commanded Tarr to deist and refrain from breaching the Declaration of Covenants, Conditions and Restrictions for Lantana Southwest Single Family Properties and ordered the Clerk to issue a writ of injunctions in conformity with the law and the terms of her Order. The Court hereby includes said Order by reference in this Agreed Final Judgment.

The only remaining issue remaining in the case is Lantana's claim for attorney's fees. The Court finds based on the signatures of their counsel that Lantana and Tarr have agreed that eighty eight thousand dollars ($88,000.00) are reasonable and necessary fees for the prosecution and defense of the above-referenced Lawsuit by Lantana up to the signing of this Agreed Final Judgment. Lantana and Tarr further agree that thirty five thousand dollars ($35,000.00) are reasonable and necessary fees to be paid to Lantana should Tarr file an unsuccessful appeal of this cause to the Texas Court of Appeals. This agreed amount, however, is the maximum amount to be paid by Tarr to Lantana in the event of said appeal and all amounts due and payable must have been incurred by or on behalf of Lantana.

# Appendix B

# PROP §5.006. ATTORNEY'S FEES IN BREACH OF RESTRICTIVE COVENANT ACTION

(a)   In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim.

(b)   To determine reasonable attorney's fees, the court shall consider:

(1)   the time and labor required;

(2)   the novelty and difficulty of the questions;

(3)   the expertise, reputation, and ability of the attorney; and

(4)   any other factor.